**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JEFFREY DUNN and ANN DUNN, his wife,<br><br>      Plaintiffs<br><br>      v.<br><br>JAMES GRAHAM and PITTSTON TOWNSHIP,<br><br>      Defendants. | CIVIL ACTION NO. 3:14-CV-01736<br><br>(JUDGE CAPUTO) |

## MEMORANDUM

Presently before this Court is Defendants' Motion for Summary Judgment (Doc. 63). Plaintiffs have conceded that Defendants' Motion for Summary Judgment should be granted with respect to Counts II, III and V of the Amended Complaint (Doc. 15). Defendants are not owed summary judgment on Count I of the Amended Complaint because Defendant James Graham is not immune from suit in his individual capacity under the doctrine of qualified immunity. But, Defendants are owed summary judgment on Count IV of the Amended Complaint because there is no material dispute of fact regarding the training received by Defendant Graham, and Plaintiffs have offered no evidence to suggest that Defendant Pittston Township was "deliberately indifferent" in failing to train or supervise Defendant Graham. For these reasons, Defendants' Motion for Summary Judgment will be granted in part and denied in part.

## I. Background

### A. Factual Background

The facts presented in the summary judgment record, viewed in the light most favorable to Plaintiffs, are as follows:

Plaintiff Jeffery Dunn is a property owner in Pittston Township ("the Township"), Pennsylvania. (Plaintiffs' Statement of Undisputed Material Fact ("PSMF"), at ¶ 1.) He and

his wife (collectively "Plaintiffs"), Ann Dunn, are the co-owners of a corporation JD Custom Pools and Services, Inc., and own property at 1018 Suscon Road, Pittston, Pennsylvania. (Defendants' Statement of Undisputed Material Fact ("DSMF"), at ¶¶ 2,4.)

At all times material to this action, Defendant James Graham ("Graham") was a part-time police officer for the Township. (PSMF, at ¶¶ 2.) Graham completed the Municipal Police Training Academy and obtained Act 120 certification, a certification required to be employed as a municipal police officer in Pennsylvania. (PSMF, at ¶ 39.) Further, Graham had experience working as a police officer. Prior to joining the Pittston Township Police force, Graham worked as a part-time police officer in Avoca Borough. (*Id.*) During his time as a member of the Pittston Police force, Defendant Graham received at least one complaint from a colleague about his conduct. (PSMF, at ¶¶ 53-56.) Specifically, Officer Stefanie Aversa filed a complaint with the Pennsylvania Human Relations Commission claiming that Graham grabbed her arm, repeatedly poked her in the chest, and yelled at her until another officer stepped in to stop him. (*Id.*)

On October 12, 2010, and again on April 1, 2011, the Township issued a Notice of Zoning Ordinance Violation to Plaintiffs with regard to the use of their property for commercial business operations. (DSMF, at ¶ 18,19.) Following the issuance of these violations, a hearing was conducted. (DSMF, at ¶ 20.) At this hearing, Plaintiffs–represented by counsel–were found to have violated the Township zoning ordinances. (*Id.*) Plaintiffs appealed the hearing officers decision to no avail. (DSMF, at ¶ 21.)

On or about July 25, 2012, Plaintiff Ann Dunn applied for a permit to build a large garage on Plaintiffs' property. (DSMF, at ¶ 22.) The permit application suggested that the garage would be approximately 2,400 square feet and would be used to park vehicles and store Plaintiffs' personal property. (*Id.*) The Township's zoning ordinance prohibited detached garages from exceeding 750 square feet. (DSMF, at ¶ 23.) For this reason,

Plaintiffs' permit application was denied on August 3, 2012. (*Id.*) That day, Zoning Officer Terry Best issued a letter to Plaintiffs advising them that their application had been denied. (*Id.*)

After it appeared that Plaintiffs had started construction without the requisite permit, Officer Best issued, and planned to deliver, a Stop Work Order on September 7, 2012. (DSMF, at ¶¶ 24, 25.) Because Best knew that Mr. Dunn had a reputation as a "hot head" he requested that the Township assign a police officer to accompany him to serve the Stop Work Order. (DSMF, at ¶ 28.) The Township's Officer-in-Charge, Sergeant Lena Angelella accommodated Best's request and assigned Graham to accompany Best to Plaintiffs' property. (DSMF, at ¶ 29.)

When Best and Graham arrived at Plaintiffs' property they noticed that approximately six workers were in the process of erecting the garage at issue. (DSMF, at ¶ 31.) Best proceeded onto the property to serve the Stop Work Order on those constructing the garage. (DSMF, at ¶33; Plaintiffs' Answer to DSMF, at ¶ 33.) At that time, Mr. Dunn confronted both Best and Graham.[1] The events that follow the initial confrontation are vehemently contested. Plaintiffs claim that Mr. Dunn informed Best and Graham that they had no authority to be on his property and that he planned to contact the State Police. Upon picking up his phone to call the State Police, Plaintiffs allege that "Graham abruptly hit" Mr. Dunn.[2] (PSMF, at ¶ 12.) Conversely, Defendants' claim that Mr. Dunn was threatening both Best and Graham, and approached Graham swinging his cell phone in front of Graham's

---

[1]    How Mr. Dunn fist came to confront Best and Graham is disputed. Defendants claim that Mr. Dunn drove a "bobcat" within three feet of where they were standing and threatened them not to move any further. Plaintiffs have categorically denied this account of their interaction.

[2]    Describing the force of the Graham's hit, Mr. Dunn has testified that he felt like he was hit with a club or blackjack. (PSMF, at ¶ 13.)

face. As a result, Graham "hit the cell phone" so that his view of the others on the property was not obstructed.[3] (DSMF, at ¶¶ 35-38; PSMF, at 47-48.)

Following the physical altercation between Graham and Mr. Dunn, Mr. Dunn began to complain of pain in his wrist. (PSMF, at ¶ 50.) While Graham believed that Mr. Dunn was "overreacting," Mr. Dunn was ultimately taken to the hospital via an ambulance for treatment. (PSMF, at ¶ 17, 51.)

As a result of the injury Mr. Dunn sustained during the altercation with Graham, on February 26, 2016, Mr. Dunn had surgery on his right thumb. (PSMF, at ¶ 59.) While the surgery addressed pre-existing symptoms, Mr. Dunn's doctor claimed that "the need for surgical intervention was a direct result of the injury sustained on September 7, 2012." (PSMF, ¶ 61.) Notably, Defendants obtained an independent evaluation of Mr. Dunn's condition that did not dispute that Mr. Dunn's surgery was required due to the injury sustained on September 7, 2012. (Defendants' Answer to PSMF, at ¶ 61.) Rather, Defendants' expert disputed the recovery time required following surgery. (*Id.*)

## B.    Procedural Background

Plaintiffs filed a Complaint on September 6, 2014 (Doc 1). On December 19, 2014, Defendants filed a Motion to Dismiss Plaintiffs' Complaint in its entirety, which this Court granted in part and denied in part. While this Court granted Defendants' Motion to Dismiss in part, Plaintiffs were provided leave to amend their complaint.

On March 10, 2015, Plaintiffs filed an Amended Complaint (Doc. 15). The Amended Complaint contained the same claims that were evident in Plaintiffs' original Complaint: (1) Count I alleging assault and battery and the use of excessive force; (2) Count II alleging a

---

[3]    In particular, Graham testified at his deposition that he hit Mr. Dunn's cell phone because "[i]t was in my way of me [*sic*] seeing his son behind him, who was more of a threat, because he was a sneaky little bastard. . . ." (PSMF, at ¶ 48.)

violation of Mr. Dunn's right to Procedural and Substantive Due Process; (3) Count III alleging a violation of Plaintiffs' rights to the security and privacy of their home; (4) Count IV alleging inadequate supervision and training by Pittston Township; and (5) Count V alleging a loss of consortium on the part of Anna Dunn. On March 23, 2015 Defendants again filed a motion to dismiss (Doc. 16). This Motion specifically sought dismissal of Count II of the Amended Complaint. This Court granted Defendants' Motion, and Count II of the Amended Complaint was dismissed. Following the dismissal of Count II, Defendants filed an Answer to Plaintiffs' Amended Complaint (Doc. 23).

On February 28, 2017, after a number of discovery disputes, Defendants filed the instant Motion for Summary Judgment (Doc. 63). This Motion has been fully briefed and is ripe for disposition.

## II. Legal Standard

Summary Judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact,

summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing FED. R. CIV. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "need not be as great as a

6

preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III. Discussion

**A.     Count I: Excessive Force**

*1.     Excessive Force: Qualified Immunity*

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The Third Circuit has remarked that qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Blackhawk v. Pa.*, 381 F.3d 202, 215 (3d Cir. 2004). "In considering the applicability of qualified immunity, courts engage in a two-pronged examination." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). First, a court decides "whether the facts that a plaintiff has shown make out a violation of a constitutional right." *Id.* If at the conclusion of this analysis a court finds that no constitutional violation took place, then the court must enter judgment in the defendant's favor. However, if a constitutional violation is found, a court must then determine "whether the right at issue was 'clearly established[4]' at the time of defendant's alleged misconduct." *Pearson v.*

---

[4]     "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 132 S. Ct. at 2093. "[E]xisting precedent must have placed the statutory or constitutional question beyond debate" for a right to be clearly established. *Id.* The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or

*Callahan*, 555 U.S. 223, 232 (2009)). Summary judgment[5] is appropriate if no reasonable juror could conclude that [a plaintiff]'s clearly established rights were violated." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000).

Plaintiffs claim that Graham used excessive force in striking Mr. Dunn when Graham learned that Mr. Dunn planned to call the State Police. Such a claim arises under the Fourth Amendment's guarantee that individuals have a right "to be secure in their persons. . . against unreasonable. . . seizures." U.S. Const. Amend. IV.

To determine if force applied by an officer was excessive, and thus violated the Fourth Amendment, a court must determine if the force applied was objectively reasonable. *Sharrar v. Felsing*, 128 F.3d 810, 820 (3d Cir 1997). Measuring the reasonableness of a use of force "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tenn. v. Garner*, 471 U.S. 1, 7-8 (1985)). Both the Supreme Court and the Third Circuit have provided a number of factors courts should consider when assessing reasonableness in the context of an excessive force claim. These factors–known in the Third Circuit as the *Sharrar* factors–are: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; (3) whether he is actively resisting arrest or attempting to evade arrest by flight; (4) the possibility that the persons subject to the police action are themselves violent or dangerous; (5) the duration of the action; (6) whether the action takes place in the context of effecting an arrest; (7) the possibility that the suspect may be armed;

---

constitutional question beyond debate." *Taylor*, 135 S. Ct. at 2044.

[5]  Summary Judgment is the favored means for determining if qualified immunity applies because a purpose of the qualified immunity doctrine is to shied immune officials from the burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

and (8) the number of persons with whom the police officers must contend at one time. *See Graham*, 490 U.S. at 396; *Sharrar*, 128 F.3d at 822. Additionally, the Circuit has noted "the fact that the physical force applied was of such an extent as to lead to injury is [also] a relevant factor to be considered as part of the totality" of the circumstances. *Sharrar*, 128 F.3d at 822 (citation omitted). Notably, when considering these factors it is important to remember that "police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

Notably, at summary judgment, courts are required to view the facts presented in the light most favorable to the party opposing the motion. *United States v. Diebold*, 369 U.S. 654 (1962) (per curiam). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007).Thus, if a plaintiff offers facts to show that a defendant violated plaintiff's clearly established constitutional right, then summary judgment must be denied. *See Giles v. Kearney*, 571 F.3d 318, 327-28 (3d Cir. 2009) (denying summary judgment on qualified immunity grounds after "accepting [plaintiff's] version of the facts."). So, this court should accept plaintiff's version of events when determining if qualified immunity provides a basis for a grant of summary judgment.

Applying the *Sharrar* factors to the facts presented, this Court concludes that sufficient evidence exists to support the finding that the force used was excessive, and thus Mr. Dunn's Fourth Amendment right was violated. Mr. Dunn had not committed a serious crime, but had allegedly violated a local zoning ordinance. Further, Graham was not engaging Mr. Dunn to place him under arrest, but rather to ensure he was properly served with an order from the zoning board.  Strikingly, the altercation occurred after the order had been successfully served. Moreover, while Graham may have believed that Mr. Dunn was a "hot head," Graham had no reason to believe that he was armed or posed an immediate

threat to officer safety.[6] This Court also takes notice of the fact that the force applied to Mr. Dunn resulted in an injury that required him to undergo surgery. There is no question that Mr. Dunn increased the volatility of the situation by screaming obscenities at Graham and threatening his children. But, Mr. Dunn's actions do not justify Graham's use of force. Simply put, Graham could have left the scene having accomplished his job without having to physically confront Mr. Dunn.

Since this Court will find sufficient evidence exists to support the proposition that Graham violated Mr. Dunn's constitutional right to be free from an unreasonable seizure, this Court must determine if the right violated was "clearly established." It is. The right to be free from excessive force is well-established. *See Graham*, 490 U.S. at 394. In fact, The Third Circuit has opined that *the Sharrar* factors are so well established that a "reasonable officer" is guided by them.[7] *See Estate of Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005); *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006); *Green v. N.J. State Police*, 246 Fed. App'x. 158, 162-63 (3d Cir. 2007). Therefore, since the right violated was well established, qualified immunity does not apply to bar Plaintiffs' claim.

Because Graham is not shielded from suit, Defendants' Motion for Summary

---

6    Graham claims that Mr. Dunn was "waving a cell phone in front of [his] face," and that this conduct violated his "reactionary gap." Graham suggests that because Mr. Dunn encroached upon his "reactionary gap" he was right to believe that a threat existed. Alternatively, Graham testified that he hit Mr. Dunn because his hand was obstructing Graham's view of Mr. Dunn's son, who Graham termed a "sneaky little bastard."

7    One may argue that the cases cited for this proposition are factually distinguishable from the instant case because the cases all involve an officers use of force during an arrest. However, if it is well established that an officer may not use excessive force when making an arrest, it is certainly well established that an officer may not use excessive force on an individual who has committed no crime. For this reason, any such argument is misguided.

10

Judgment will be denied with respect to Count I of the Amended Complaint.

**B.      Counts II, III, and V**

Plaintiffs have conceded that summary judgment should be granted in favor of Defendants on Counts II, III, and V of the Amended Complaint. For this reason, Defendants' Motion for Summary Judgment on these Counts will be granted.

**C.      Count IV: Inadequate Supervision and Training**

Defendants argue that summary judgment should be entered in their favor because Plaintiffs have provided no evidence of any prior incident where Officer Graham used excessive force, or any policy, practice or custom on the part of the Township which condoned or authorized the use of excessive force. Defendants are correct.

A local government entity may be liable for constitutional violations resulting from inadequate training or supervision of its employees if the failure to train amounts to a custom of the municipality. Such a failure must "amount[] to deliberate indifference to the constitutional rights of persons with whom the police come in contact." *Colburn* v. *Upper Darby Twp.*, 946 F.2d 1017, 1028 (3d Cir. 1991) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To prove such institutional liability on a theory of deliberate indifference is an especially difficult showing for a plaintiff to satisfy where the plaintiff, as is the case here, has alleged that insufficient training or supervision has caused a constitutional violation. *See Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Such a showing requires that "(1) municipal lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila*., 181 F.3d 339, 357 (3d Cir. 1999). Moreover, the plaintiff proceeding on such a theory must establish that the municipality's "deliberate conduct . . . was the 'moving force' behind the injury alleged." *Reitz*, 125 F.3d at 145 (quoting *Bd. of the Cnty.*

*Comm'rs v. Brown*, 520 U.S. at 397, 404 (1997)). The need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." *Horton v. City of Harrisburg*, No. 06-2338, 2009 WL 2225386, *4 (M.D. Pa. July 23, 2009) (quoting *Strauss v. Walsh*, No. Civ. A. 01-3625, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002)). Additionally, in order to recover for municipal liability on a failure-to-train theory, the alleged failure must be "closely related to the ultimate (constitutional) injury." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 325 (3d Cir. 2005). The Supreme Court has repeatedly reiterated these principles. *See, e.g., Connick v. Thompson*, 563 U.S. 51, 60 (2011).

Plaintiffs have failed to offer evidence to meet the "especially difficult" burden they bear to bring an action against a municipal defendant for the conduct of its agent. First, Plaintiffs failed to offer any evidence that suggests that policy makers at the Township knew that the use of excessive force by officers on its force was a problem that needed to be confronted. Rather, Plaintiffs rely solely on the acts of Graham to show that the Township *should* have known such a problem existed. Specifically, Plaintiffs reference conduct contained within a complaint made by one of Graham's colleagues on the force, Officer Stephanie Aversa. In Ms. Aversa's complaint to the Pennsylvania Human Relations Commission, she claims that Graham grabbed her arm and repeatedly poked her in the chest while he yelled at her. Not only is this conduct unrelated to a claim of excessive force, but occurred *after* the incident between Mr. Dunn and Graham. For these reasons, any reliance by Plaintiffs on the conduct alleged by Ms. Aversa to suggest that the Township was aware of a common practice or custom of officers in the Township at the time of the incident at issue is misplaced. Additionally, Plaintiffs failed to provide any evidence to suggest Graham was woefully under trained. It is uncontested that Graham received

training. Specifically, Graham completed the Municipal Officers' Training Program to become Act 120 certified, and served as a municipal police officer in Avoca Borough prior to becoming a police officer in Pittston. Put simply, Graham was trained and the need for additional training was not "so apparent that any reasonable policy maker or supervisor would have taken" action. *Horton*, 2009 WL 2225386 at *4.

Because there is no material dispute of fact regarding the training received by Graham, and Plaintiffs have offered no evidence to suggest that the municipality was "deliberately indifferent to the constitutional rights of persons with whom the police come in contact," Defendants' Motion for Summary Judgment will be granted with respect to Count IV of Plaintiffs' Amended Complaint.

## IV. Conclusion

For the above stated reasons, Defendants' Motion for Summary Judgment will be granted in part and denied in part.

An appropriate order follows.


November 2, 2017                              /s/ A. Richard Caputo
Date                                         A. Richard Caputo
                                             United States District Judge